UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARY ALAN NOBLE, ) | |
| ) | Case No. C06-579-JLR-JPD |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| SANDRA CARTER, ) | |
| ) | |
| Respondent. ) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Gary Alan Noble, an inmate at the Monroe Correctional Complex in Monroe, Washington, is serving a sentence of life in prison without parole after being adjudged a "persistent offender" under the Washington Persistent Offender Accountability Act ("POAA"), former R.C.W. § 9.94A.120(4) (2000) of the Sentencing Reform Act of 1981 ("SRA"). He has filed a 28 U.S.C. § 2254 petition for writ of habeas corpus arguing that his current sentence was unconstitutionally enhanced by the use of a 1969 conviction in which he was denied the assistance of counsel during a critical stage of his criminal proceedings. Dkt. No. 1. Respondent has filed a response opposing the petition. Dkt. No. 10. Oral arguments were heard in this matter on January 18, 2007. After careful consideration of the pleadings, supporting materials, oral arguments, governing law, and the balance of the record, the Court recommends that the petition be DENIED and this case DISMISSED with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II.  FACTS AND PROCEDURAL HISTORY

In early 2000, the petitioner was charged with five counts of second-degree robbery which took place between January 6, 2000 and February 1, 2000.  A jury convicted him on all five counts on November 17, 2000, and he was subsequently sentenced to five terms of "life in prison without parole" as a result of the trial court's finding that petitioner was a "persistent offender" under the POAA.  Administrative Record ("AR") Ex. 1.[1]

Proceeding through counsel, petitioner appealed his conviction and sentence to Division I of the Washington Court of Appeals, to no avail.  *See State v. Noble*, 116 Wn.App. 1043 (2003) (unpublished opinion).  He subsequently sought review by the Washington Supreme Court, which was denied on January 7, 2004.  *State v. Noble*, 150 Wn.2d 1026 (2004) (unpublished opinion).  The Court of Appeals issued its mandate on January 26, 2004. AR Ex. 9, App. C.

On January 21, 2005, petitioner filed a personal restraint petition ("PRP") with the Court of Appeals, seeking relief from confinement arising from his life sentences as a persistent offender.  *Id.* Ex. 8.  This petition was dismissed by the Court of Appeals on October 19, 2005, and further review was denied by the Washington Supreme Court on January 27, 2006.  *Id.* Exs. 13, 15.  The Court of Appeals issued a Certificate of Finality on June 29, 2006.  *Id.* Ex. 18.  On April 24, 2006, petitioner filed the present § 2254 habeas corpus petition.  Dkt. No. 1.

## III.  CLAIM FOR RELIEF

This case presents the general question of whether federal postconviction relief is available to a prisoner who challenges a current sentence on the ground that it was unconstitutionally enhanced by a prior conviction for which he is no longer in custody. Petitioner's § 2254 petition presents one specific issue for review:  whether petitioner's 1969

---

[1] The POAA is now codified at R.C.W. § 9.94A.505.  It is commonly known as Washington's "three strikes" law.

REPORT AND RECOMMENDATION
PAGE - 2

conviction properly constitutes a "first strike" under the POAA. Before petitioner could be determined to be a "persistent offender" and sentenced to life in prison without parole, he had to have been found to have committed certain predicate offenses preceding the 2000 second-degree robbery convictions. Petitioner's all-important "first strike" came as a result of a May 5, 1969 conviction ("1969 conviction") for first-degree assault and attempted robbery that took place on October 12, 1968, when the petitioner was a seventeen-year-old juvenile. AR Ex. 9, App. B. During juvenile court proceedings on November 7, 1968, the juvenile court declined jurisdiction over petitioner, and he was subsequently charged, convicted, and sentenced in King County Superior Court. *See* Dkt. No. 17-2;[2] AR Ex. 9 at 6 (reflecting October 19, 1968 arrest); AR Ex. 5 (noting November 18, 1968 information); AR Ex. 9, App. B (May 5, 1969 judgment and sentence).

Petitioner's § 2254 petition asserts that counsel was not appointed for him at this juvenile decline hearing and he did not waive his right to the same. Although petitioner concedes he was represented by counsel after his case was transferred to superior court, he argues that the 1969 conviction could not be used to enhance his 2001 sentence, because he was deprived of his Sixth Amendment right to counsel at that "critical" decline proceeding. He argues that if the juvenile court had not declined jurisdiction, the 1969 conviction would not have constituted a "strike" under R.C.W. § 9.94A.030(31) and (33). Without that predicate conviction, petitioner would not have "struck out" under the POAA in 2001, and would have instead faced a maximum sentence of 84 months, not life without parole.

---

[2] Docket No. 17-2, the juvenile court's ruling declining jurisdiction, was added to the record on respondent's motion during oral argument in this matter. *See* Dkt. No. 18. Petitioner lodged no objection to this motion, but moved in turn to expand the record with certain additional declarations. *Id.* The Court granted this request, and eventually afforded petitioner until February 12, 2007 to supplement the record. Dkt. No. 20. Petitioner filed a supplemental declaration on February 13, 2007. *See* Dkt. No. 21.

REPORT AND RECOMMENDATION
PAGE - 3

Respondent argues that the present petition is simply an attack on the 1969 conviction, long since time-barred or, in the alternative, that the petition has not been properly exhausted, and cannot now be exhausted due to an adequate, independent, and mandatory state procedural rule. Respondent also contends that because the defendant is no longer "in custody" on his 1969 conviction, his habeas petition should be dismissed. Finally, respondent asserts that because the decisions of the Washington appellate courts were not contrary to clearly established federal law, the petition must be denied on its merits.

## IV.   DISCUSSION

### A.   Petitioner's Claim Is Not Time Barred

The respondent first argues that the current petition is time-barred because it was not filed within one year after the 1969 conviction became final, or one year after April 24, 1996, the date upon which the federal statute of limitations began to run on convictions that were final before the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254. The respondent's argument misses the mark. The petitioner is not challenging his 1969 conviction, except as it was used to enhance the sentence for his 2000 convictions—the punishment for which he now seeks collateral relief. Petitioner's direct challenge to his current sentence was rejected by the Washington Supreme Court on January 7, 2004. AR Ex. 4.[3] Petitioner's first post-conviction PRP was filed on January 21, 2005, or 289 days after finality, and was pending until a panel of the Washington Supreme Court denied further review on March 7, 2006. *See* AR Exs. 8, 17. The present habeas petition was filed 48 days later. Dkt. No. 1. Because the statute is tolled while properly-filed PRPs are pending, 28 U.S.C. § 2244(d)(2), the petition was filed within the one-year statute of limitations. The petition is not time barred.

---

[3] Because petitioner did not petition the United States Supreme Court for writ of certiorari, his conviction became "final" for purposes of habeas review 90 days after his direct appeal was denied, or April 7, 2004. *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001).

REPORT AND RECOMMENDATION
PAGE - 4

B.      Petitioner Satisfies the "In-Custody" Requirement

In order for a federal court to have subject-matter jurisdiction to issue a writ of habeas corpus, the petitioner must be "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490, 494 (1989) (per curiam); *Williamson v. Gregoire*, 151 F.3d 1180, 1182-83 (9th Cir. 1998).  This requires that the petitioner be in custody pursuant to the sentence he is attacking by way of the petition. *Maleng*, 490 U.S. at 490-91.  "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual in custody for the purposes of the habeas attack upon it." *Id*. at 492 (internal quotations omitted).

When a habeas petitioner is incarcerated pursuant to a subsequent conviction, and an expired conviction was used to enhance the subsequent conviction, the in-custody requirement can be satisfied for purposes of challenging the current conviction in certain limited circumstances. *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 401 (2001) (discussing *Maleng*, 490 U.S. at 493-94); *Brock v. Weston*, 31 F.3d 887, 890-91 (9th Cir. 1994)).  However, before the Court can construe a habeas petition as an attack on a current sentence as enhanced by a prior expired conviction, the petitioner must first show a "'positive and demonstrable nexus' between [the] prior conviction and current custody." *Brock*, 31 F.3d at 890 (quoting *Lowrey v. Young*, 887 F.2d 1309, 1312 (7th Cir. 1989)).

Even when this requirement can be met, a petitioner may generally not challenge the expired conviction by means of the allegedly enhanced current sentence. *Lackawanna*, 532 U.S. at 403-04.  Although the Supreme Court has identified very limited exceptions to this rule, "to be eligible for review, the challenged prior conviction must have adversely affected the sentence that is the subject of the [current] habeas petition." *Id*. at 406.  That is, the prior conviction must have "actually increased the length of the sentence the [subsequent] court ultimately imposed." *Id*. at 407.  In this case, the petitioner is serving a life sentence because

REPORT AND RECOMMENDATION
PAGE - 5

his 1969 conviction was considered a first strike. If this conviction was not so considered, petitioner would have faced a maximum term of 84 months. Consequently, he has satisfied the "in-custody" requirement of 28 U.S.C. § 2254(a).[4]

### C. Petitioner's Claim Is Not Procedurally Barred

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Procedural defaults in state court may result in a procedural bar in federal habeas actions. The Supreme Court of the United States has recognized that when a petitioner has defaulted on his claims in state court, principles of federalism, comity, and the orderly administration of justice require that federal courts forego the exercise of their habeas corpus power, unless the petitioner can demonstrate (1) cause for the default and prejudice attributable thereto, or (2) that failure to consider the claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). The resulting bar can be express or implied. A state court invokes an express procedural bar by explicitly referring to a state rule or procedure to deny a petitioner's claim, or by referring to a case or phrase that invokes the applicable rule. *See, e.g.*, *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001) (rule); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000) (case); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir.) (phrase), *cert. denied sub nom. Blanks v. Bennett*, 540 U.S. 938 (2003). An implied procedural bar exists when a petitioner has failed to present his claims fairly to the highest state court and would now be barred from returning to do so by an adequate, independent, and mandatory state procedural rule. *Moreno v. Gonzalez*, 116 F.3d 409, 411 (9th Cir. 1997).      In the present case, the Washington Supreme Court and Court of

---

[4] To this end, the Court disagrees with respondent's argument that, to avail himself of *Lackawanna* exception, petitioner was required to make a timely exhaustion of all collateral remedies regarding his 1969 conviction decades before the ramifications of that conviction bore out for POAA purposes in 2001. *See infra* § IV.C.

REPORT AND RECOMMENDATION
PAGE - 6

Appeals expressly found that R.C.W. § 10.73.090(1) barred petitioner's claims collaterally attacking his 1969 conviction.  *See* AR Ex. 13 at 2-4, Ex. 15 at 2-3.  This provision bars collateral challenges of convictions more than one year after such convictions become "final." R.C.W. § 10.73.090(1).  Where, as here, the pertinent conviction became final prior to July 23, 1989, the petitioner has one year from that date to file a PRP.  R.C.W. § 10.73.130. According to the respondent, because petitioner defaulted by failing to meet the July 23, 1990 PRP deadline in state court, the present petition is procedurally barred in federal court.

The Court disagrees with this analysis.  Such a result would gut the exception provided for in *Lackawanna*, and to that end, would provide constitutional protection to only the most rapid recidivists.  In addition, respondent's analysis in this regard once again ignores the fact that the petitioner is not challenging his 1969 conviction, but rather, his 2001 sentence *as enhanced* by that old conviction.  Finally, it would defy all reason and fundamental fairness to say that petitioner could not establish "cause" for failing to raise a three strikes argument that did not exist in 1990, and would not be prejudiced by serving five life-without-parole sentences as opposed to an 84 month sentence (now completed).  For this significant constitutional issue, form should not prevail over substance.  Accordingly, the Court refuses to dispose of petitioner's § 2254 petition by invoking the procedural bar rule, preferring instead to address the petition on its merits.

> D. The Use of the 1969 Conviction to Enhance the Petitioner's Sentence Did Not Violate Clearly Established Federal Law
>
> 1. *Standard of Review*

AEDPA governs petitions for habeas corpus filed by prisoners who were convicted in state courts.  It "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A habeas petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is

*contrary to*, or involved an *unreasonable application of*, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 389-90 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.* In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court examined the meaning of the phrase "unreasonable application of law," correcting an earlier interpretation by the Ninth Circuit which had equated the term with the phrase "clear error." The Court explained as follows:

> These two standards, however, are not the same. *The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

*Lockyer*, 538 U.S. at 68-69 (citations omitted, emphasis added).

Thus, the Supreme Court has directed lower federal courts reviewing habeas petitions to be extremely deferential to state court decisions. A state court's decision may be overturned only if the application is "objectively unreasonable." *Id.* Whether a state court

adjudication was reasonable depends upon the specificity of the rule; "the more general the rule, the more leeway courts have . . . ." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### 2. *The Supreme Court's Jurisprudence on Sentencing Enhancements Based on Prior Convictions Without the Right to Counsel*

In *Lackawanna*, the Supreme Court was presented with the question of whether a state prisoner could bring a habeas petition when his current sentence was enhanced by an allegedly unconstitutional prior conviction for which the sentence had fully expired. *Lackawanna*, 532 U.S. at 401. There, the petitioner had been convicted in 1986, and sought relief under Pennsylvania's Post Conviction Relief Act, alleging that his trial attorney was constitutionally ineffective. *Id.* at 397. No action was taken by the state court on his petition, and he ultimately was released from custody after serving his sentence. *Id.* at 399. He was subsequently convicted of aggravated assault, and the court relied, in part, upon his 1986 conviction to determine the petitioner's criminal history for sentencing purposes. *Id.*

The Supreme Court in *Lackawanna* held that as a general proposition, the need for finality of convictions and ease of administration of challenges to expired convictions precluded direct or collateral attack on such convictions, even if used for the purposes of sentence enhancements. *Id.* at 403-04. However, the Court noted an important exception to this general proposition in the case where a petition challenged an enhanced sentence on "the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Id.* at 404. The Court noted the special status of *Gideon* and concluded that the administrative concerns regarding failure to appoint counsel were generally not applicable. *Id.* The Court ultimately held:

> When an otherwise qualified § 2254 petitioner can demonstrate that his current sentence was enhanced on the basis of a prior conviction that was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, the current sentence cannot stand and habeas relief is appropriate.

REPORT AND RECOMMENDATION
PAGE - 9

*Id.*

The present petition is facially consistent with the exception described in *Lackawanna*. The remaining question, then, is *when* should counsel have been appointed regarding the 1968 charges? Petitioner asserts that counsel was appointed in the superior court trial, but that counsel was not appointed, nor was he afforded his right to the same, when the juvenile court was considering whether or not it should retain jurisdiction.

        3.      *The Supreme Court's Jurisprudence on the Timing of Appointment of Counsel*

The Supreme Court has long instructed that the Sixth Amendment right to counsel in a criminal case extends to "all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004); *United States v. Wade*, 388 U.S. 218, 224 (1967). "The essence of a 'critical stage' is not its formal resemblance to a trial, but the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003).

In *Kent v. United States*, 383 U.S. 541 (1966), the Supreme Court held that a juvenile court's determination to retain or waive jurisdiction over a defendant is a "critical stage" in a criminal proceeding, during which the basic guarantees of due process attach. *Id.* at 553, 556, 560; *see also In re Gault*, 387 U.S. 1, 36 (1967) (similar); *Barker v. Estelle*, 913 F.2d 1433, 1440 (9th Cir. 1990) ("[A] juvenile court's decision to transfer a child from the statutory protection of the juvenile court to an adult court is 'critically important.'"), *cert. denied*, 500 U.S. 935 (1991); *Harris v. Procunier*, 498 F.2d 576, 577 (9th Cir.) (en banc) (same), *cert. denied*, 419 U.S. 970 (1974). Accordingly, "*before* a juvenile can be transferred to an adult court, the juvenile must be given a hearing, *effective assistance of counsel*, access to records relied on by the court, and a statement of reasons for the juvenile court decision." *Barker*, 913 F.2d at 1440 (emphasis added); *see also Juvenile Male v. Commonwealth of Northern*

*Mariana Islands*, 255 F.3d 1069, 1072 (9th Cir. 2001) (same); *Guam v. Kingsbury*, 649 F.2d 740, 743 (9th Cir. 1981) (same); *State v. Holland*, 30 Wn.App. 366, 373, 635 P.2d 142 (1981) ("Although decline proceedings are non-adversarial, the juvenile is afforded the protections of the due process clauses of the United States and Washington constitutions.").

Petitioner argues that because he received a decline hearing, he was entitled to counsel under *Gideon* and progeny, the failure of which constitutes a structural defect, not harmless error. Respondent insists that counsel *was* provided, and in the alternative, argues that petitioner's decline hearing and concomitant right to counsel were never required because petitioner was not charged until November 18, 1968—when he was eighteen years old. This argument, in essence, contends that because the decline hearing was not mandatory due to the automatic jurisdiction of the superior court upon charging, it was not "critical" to petitioner under *Gideon*.

    4.    *Because Petitioner Was Represented by Counsel at His Juvenile Decline Hearing, the Washington Supreme Court's Decision Could Not Have Been Contrary to Clearly Established Federal Law*

On January 19, 2007, counsel for the petitioner filed a document entitled "Submission of Additional Record," which included a microfiche copy of the juvenile court's ruling declining jurisdiction. Dkt No. 17-2. This document, dated and file-stamped November 7, 1968, unambiguously refers to a Mr. Edmund B. Raftis serving in the capacity of appointed counsel for the petitioner during his proceedings before the juvenile court. *See id.* The document was added, without objection, to the administrative record in this case on respondent's motion during oral argument. *See* Dkt. No. 18. That Mr. Raftis represented petitioner during this time period in the proceedings is further corroborated by a reference to Mr. Raftis in a February 20, 1969 affidavit filed by petitioner's subsequent counsel, Mr. Barry A. Schneiderman. AR Ex. G at 2.

Among the hundreds of documents filed in this case, none is more important. The information contained within the juvenile court's decline order constitutes the only objective evidence in the entire record regarding whether petitioner was represented by counsel at his 1968 juvenile decline hearing. Its authenticity is undisputed. The contents of petitioner's declarations and other subjective filings do not weaken the conclusive nature of the information provided by this document. Rather, the latter undermines the reliability of the former. Furthermore, petitioner's final declaration of February 13, 2007 (Dkt. No. 21-2), adds no new information controverting the 1968 decline order or the other objective information in the record that corroborates its notation of appointed counsel. *See* AR Ex. G at 2.

The Court finds that Docket No. 17-2, the juvenile court's 1968 decline order, conclusively establishes that petitioner was afforded counsel at all juvenile proceedings relevant to the matter now before the Court. Because petitioner was represented by counsel at his 1968 juvenile decline hearing, *Lackawanna*'s Sixth Amendment exception does not apply, and petitioner is precluded from collaterally attacking his 2001 sentence (as enhanced by his 1969 conviction) through this § 2254 petition.

> 5. *Assuming Arguendo that Counsel Was Not Provided at Petitioner's "Critical" Juvenile Decline Hearing, the Washington Supreme Court's Decision Was Neither Contrary to Nor An Unreasonable Application of Clearly Established Federal Law*

When considering the PRPs challenging the petitioner's sentence, neither the Washington Court of Appeals nor the Washington Supreme Court cited *Lackawanna* or *Kent*. Instead, the Court of Appeals, focusing primarily on the 1969 judgment and sentence, explained that petitioner's claims were procedurally barred because his 1969 conviction was never appealed, and alternatively, that such claims were without merit for failure to establish that the 1969 conviction was facially unconstitutional. AR Ex. 14, App. A at 2-7. The

Washington Supreme Court likewise concluded that petitioner's challenge was procedurally barred, interpreting the appeal to be primarily a challenge to the validity of the 1969 conviction, instead of an attack on its use to enhance the 2001 sentences. *See id.* Ex. 15 at 4 ("Since Mr. Noble establishes no ground for challenging his 1969 conviction beyond the one-year time limit on collateral attack, the sentencing court properly counted that conviction as a strike."). The Commissioner did not discuss whether the provision of counsel was required at a juvenile decline proceeding. The Washington Supreme Court denied review without substantive comment. *Id.* Ex. 17.

Although the Washington appellate courts failed to cite or otherwise address the specific holdings in *Lackwanna* or *Kent*, it would be error to say that the principles of those cases were ignored or flouted. Both the Washington Supreme Court and Court of Appeals performed some analysis of petitioner's right-to-counsel argument. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding ["contrary to" clause's] pitfalls does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."); *Sims v. Rowland*, 414 F.3d 1148, 1152 (9th Cir. 2005) (same). In rejecting petitioner's contention that the superior court improperly counted the 1969 conviction as a predicate strike under the POAA, the Court of Appeals' October 19, 2006 Order of Dismissal explained as follows:

> Noble points out that he was only 17 years of age when he was arrested on the assault and attempted robbery charges. Former R.C.W. 13.04.120 (1959) sets forth the procedures to be followed when a person under 18 years of age was arrested for alleged criminal activity. That statute, which was in effect when Nobel [*sic*] committed his offenses, provided that a juvenile court "may proceed to hear and dispose of the case." And, while this language may be a bar to proceedings against a person under 18, it does not deprive the adult court of jurisdiction after the juvenile reaches 18 years of age. *In re Application of Dillenburg*, 70 Wn.2d 331, 341-42, 413 P.2d 940, 422 P.2d 783 (1966); *State v. Ring*, 54 Wn.2d 250, 253, 339 P.2d 461 (1959).
>
> While Noble has presented court records that indicate some proceeding took place in juvenile court, "there is no constitutional right to be tried in a juvenile court." *In re Personal Restraint of Boot*, 130 Wn.2d 553, 571, 925 P.2d 964 (1996) (quoting *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137

> (1990)). Jurisdiction is automatically transferred to adult court when charges are not filed against the juvenile until after he or she turns 18 years of age. *State v. Bushnell*, 38 Wn.App. 809, 811, 690 P.2d 601 (1984). As this court found in Noble's direct appeal, he "was 18 years of age when he was charged and convicted." Because there was no need of a decline hearing for jurisdiction over Noble to be properly transferred to adult court, the absence of any documents showing that juvenile court jurisdiction was declined proves nothing. Unlike the cases cited by Noble, the State did not bring charges against Noble until he turned eighteen. Under the circumstances, there was no legal impediment to charging and convicting Noble in adult court.

AR, Ex. 13 at 4-5.

The same court's April 21, 2003 ruling on petitioner's direct appeal mirrored this analysis, noting as follows:

> Noble claims the sentencing court erred in holding that his 1969 conviction on a plea of guilty to assault in the first degree qualified as a predicate strike. We disagree. Noble was 17 years of age when he committed the assault and attempted robbery. A few days later, while still 17, he was arrested for being a runaway and for investigation of an assault on a police officer. Noble turned 18 before charges were filed, approximately one month after the crime.
>
> . . . .
>
> Although he claims he was not represented in any of the juvenile proceedings, the important fact is that he was charged and tried in adult court after he turned 18 and after the juvenile court lost jurisdiction. Thus, what might or might not have happened in juvenile court is of no moment.

AR Ex. 9, App. C at 6, 7-8.

The Supreme Court Commissioner commented similarly regarding the date of charging in his January 26, 2006 ruling denying review:

> But even if there was a decline hearing, about three weeks later Mr. Noble turned 18, and *after* that date, the State first charged him in superior court with the crimes to which he later pleaded guilty. When Mr. Noble turned 18, jurisdiction automatically shifted to superior court, and he was properly charged and convicted there. *State v. Ring*, 54 Wn.2d 250, 253, 339 P.2d 4561 (1959); *State v. Bushnell*, 38 Wn.App. 809, 811, 690 P.2d 601 (1984). And this is so even if there . . . was a defect in the decline order. *Ring*, 52 Wn.2d at 253. Even in the normal course of the juvenile proceedings, Mr. Noble likely would have turned 18 before the charges against him were resolved.

AR Ex. 15 at 4.

REPORT AND RECOMMENDATION
PAGE - 14

Case 2:06-cv-00579-JLR   Document 22   Filed 02/13/07   Page 15 of 18

Assuming, for the sake of argument, that petitioner was deprived of and did not waive his right to counsel at his 1968 juvenile decline hearing, the Court would nevertheless find that the decisions by the Washington appellate courts to affirm petitioner's sentence under the POAA was neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court of the United States. The undisputed evidence of record in this case reflects that criminal charges were filed against petitioner, *for the first time*, on November 18, 1968, after petitioner's eighteenth birthday, during which time he was provided counsel. *Id.* Ex. 5 at 2-3. Accepting the above-mentioned assumption, then, resolution of this case would hinge upon whether the appellate courts of Washington acted contrary to clearly established federal law by determining that because the petitioner was not charged (or his cause heard on its merits) until he was eighteen years of age, he was not deprived of his *Gideon* rights to be represented by counsel at the juvenile decline proceeding. In answering this question, the Court must decide whether petitioner's 1968 juvenile decline hearing—ordinarily a "critical stage" under *Kent*—was indispensable or merely optional and thus not critical at the time it occurred.

An analogous case from the Seventh Circuit suggests that the latter conclusion is most appropriate. In *Grigsby v. Cotton*, 456 F.3d 727 (7th Cir. 2006), the Seventh Circuit affirmed the denial of § 2254 relief to a petitioner sentenced to a fifty-year enhanced prison term as a habitual offender under Indiana law. Mr. Grigsby's sentence was enhanced based upon a 1978 guilty plea to first-degree murder entered in an Indiana state criminal court when he was seventeen years old, obtained after a juvenile waiver hearing during which Mr. Grigsby was not provided counsel. *Id.* at 729. Mr. Grigsby's argument for habeas relief was strikingly similar to that advanced by the petitioner today—i.e., that his sentence was enhanced on the basis of a prior *Gideon*-tainted conviction, cognizable in a § 2254 action challenging an enhanced sentence under the exception provided by *Lackawanna*.

After rejecting the respondent's arguments of procedural default and laches for reasons similar to those stated by this Court above, the Seventh Circuit proceeded to the merits of Mr. Grigsby's petition, explaining that his "*Lackawanna* claim turn[ed] on whether his juvenile waiver hearing was a 'critical stage[ ] of the prosecution' during which *Gideon* required representation by counsel." *Id.* at 732 (quoting *Jackson v. Miller*, 260 F.3d 769, 775 (7th Cir. 2001)) (second alteration added by *Grigsby* court). After acknowledging that Mr. Grigsby was charged at sixteen years of age and convicted at seventeen, the Seventh Circuit explained that while Indiana law gave juvenile courts the discretion to hold a waiver hearing (which the juvenile court did), its pertinent definition of "child" *excluded* all persons charged with first-degree murder. *Id.* at 733. This definition, according to the Seventh Circuit, rendered the juvenile waiver hearing optional and transfer to state criminal court automatic upon the return of the indictment. *Id.* For that reason, the court held that provision of counsel to Mr. Grigsby at the juvenile waiver hearing, and indeed the hearing itself, was "not . . . a critical stage at the time it would have occurred." *Id.* at 734. Accordingly, the court found no Sixth Amendment violation, and refused to set aside the use of Mr. Grigsby's 1978 conviction to enhance his 1988 sentence. *Id.*

This Court is convinced that the Seventh Circuit's reasoning in *Grigsby* applies here. Although petitioner's acts of assault and attempted robbery occurred while he was seventeen, he was eighteen when the charges were filed, the guilty pleas entered, and the convictions obtained. At that point in time, any jurisdiction the juvenile court might have had was lost, and transfer to the general jurisdiction of the superior court became automatic. *See State v. Bushnell*, 38 Wn.App. 809, 811, 690 P.2d 601 (1984) (determining jurisdiction by date of trial, not date of offense, noting that "[e]ven if a juvenile cause were pending and not yet heard on the merits prior to the juvenile's 18th birthday, the juvenile court loses jurisdiction.") (citing *State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984); *State v. Setala*, 13 Wn.App. 604, 606, 536 P.2d 176 (1975); *In re Sweet*, 75 Wn.2d 869, 870, 454

P.2d 219 (1969); *State v. Brewster*, 75 Wn.2d 137, 142-43, 449 P.2d 685 (1969)); *see also State v. Kramer*, 72 Wn.2d 904, 907, 435 P.2d 970 (1968) ("When a juvenile cause is pending *and not heard on its merits* prior to the time the juvenile reaches 18 years of age, the juvenile court loses jurisdiction over the cause.") (emphasis added).  At this time, the superior court had jurisdiction to try petitioner as an adult regardless of whether the juvenile court had properly declined jurisdiction. *Kramer*, 72 Wn.2d at 907, 435 P.2d 970; *In re Lesperance*, 72 Wn.2d 567, 576, 434 P.2d 602 (1967).  Accordingly, what might or might not have happened in juvenile court is of no constitutional moment. *State v. Ring*, 54 Wn.2d 250, 253-55, 339 P.2d 461 (1959) (affirming conviction and sentence of defendant, despite the fact that juvenile court transferred defendant to the superior court by a faulty order; court viewing as irrelevant "the fact that [defendant] was under eighteen years of age when the second amended information was filed" because "[h]e was eighteen when the case was tried").  As was the case in *Grigsby*, petitioner's decline hearing was not "critical" under *Gideon* at the time it occurred.

Although the Washington appellate courts failed to cite or specifically address the pertinent holdings in *Lackwanna* or *Kent*, neither court arrived at a conclusion contrary to that reached by the Supreme Court of the United States on a question of federal law. *Williams*, 529 U.S. at 389-90, 405-06.  Accordingly, petitioner's § 2254 petition should be denied.

### D. <u>An Evidentiary Hearing is Not Required</u>

In his reply brief and during oral argument, petitioner argued that the Court should conduct an evidentiary hearing. Dkt. No. 13 at 9-11.  According to the petitioner, such a hearing would resolve confusion regarding, among other things, the accuracy of the juvenile court's 1968 order declining jurisdiction.  Dkt. No. 17-2.

Generally, an evidentiary hearing is appropriate in a § 2254 proceeding when petitioner's allegations, if proven, would entitle him to relief. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).  Such a hearing, however, is not required when the Court is able to

REPORT AND RECOMMENDATION
PAGE - 17

resolve the petition on the existing state court record. *Id*. In this case, the record—which includes all of petitioner's state court briefs, superior court sentences and judgments, the Washington appellate courts' pertinent rulings, the juvenile court's order declining jurisdiction, and all declarations filed by petitioner—is sufficient for the Court to resolve the petition without an evidentiary hearing.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that petitioner's 28 U.S.C. § 2254 petition be DENIED and this case DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 13th day of February, 2007.

/s/ James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge